[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10866
_____

D.C. Docket No. 1:13-cv-01340-ELR

JEFF PEPPERS,

Plaintiff - Appellant,

versus

COBB COUNTY, GEORGIA,

Defendant - Appellee.
_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 25, 2016)

Before TJOFLAT, MARCUS, and ROGERS,[*] Circuit Judges.

MARCUS, Circuit Judge:

Jeff Peppers, a retired criminal investigator with the Cobb Judicial Circuit

District Attorney's Office, commenced this lawsuit in the United States District

_____

[*] Honorable John M. Rogers, United States Circuit Judge for the Sixth Circuit, sitting by
designation.

Court for the Northern District of Georgia against Cobb County, Georgia under Title VII and the Equal Pay Act, alleging discrimination on the basis of sex after he learned that a less-experienced female in the office was earning a substantially higher salary for the same job.  Although the District Attorney and Cobb County are indisputably distinct legal entities, each created separately by state law, Peppers claims that they acted as "joint employers" because the County was responsible for approving the District Attorney's budget and paying Peppers's salary and benefits. Rejecting this argument, the district court granted final summary judgment to Cobb County.

After thorough review and having taken oral argument, we affirm the judgment of the district court.  As we see it, the County is a legally separate and distinct entity that did not control the fundamental aspects of the employment relationship between the office of the District Attorney and its criminal investigators, nor did it act as a joint employer with the District Attorney.  Because its role as paymaster is wholly insufficient to establish that Cobb County was Peppers's employer, he could not sue the County under the federal anti-discrimination laws.

## I.

Jeff Peppers, a male formerly employed as an investigator in the District Attorney's Office, sued Cobb County, Georgia in 2013 under 42 U.S.C. § 2000e-2

("Title VII"), and 29 U.S.C. §§ 206, 215 ("Equal Pay Act").[1]  In his complaint,

Peppers alleged that the County employed him as a criminal investigator in the

District Attorney's Office for a number of years.  On April 18, 2011, he claimed he

was promoted from Criminal Investigator to Assistant Chief Criminal Investigator.

Peppers said that his salary should have been increased when he was promoted, but

it was not.  Peppers brought his concerns regarding his salary to the Chief Criminal

Investigator, who, he claimed, admitted that Peppers was not being paid what he

should have been, and that a female employee, Christine Nerbonne, was paid a

substantially higher salary, despite his superior qualifications, experience, and

higher rank within the department.  Indeed, while Peppers was paid $55,459.54,

Nerbonne was paid $72,384.00.

Peppers charged that the County denied him compensation to which he was

entitled, and paid him less than similarly situated female employees on account of

his gender, and thus violated Title VII of the Civil Rights Act of 1964.  He also

asserted that because of his gender, the County paid him substantially less than

female employees who were employed in jobs requiring equal work, skill, effort,

and responsibility, in violation of the Equal Pay Act.  Peppers sought relief in the

form of a recovery of the difference in compensation between what he received

---

[1] Peppers also asserted a state law breach of contract claim, but the district court declined to exercise supplemental jurisdiction over the claim, and dismissed it without prejudice.  Peppers does not challenge that decision on appeal.

and what higher-paid female employees received, as well as an equal amount of liquidated damages.

A review of this summary judgment record revealed the following undisputed facts. Cobb County had no involvement in Peppers's recruitment, his hiring, the establishment of his job responsibilities, the regulation of his work environment, or his supervision. All of these core functions were performed by the District Attorney. Nor did the County set compensation for the District Attorney's employees -- those were set by the District Attorney himself. But Peppers was actually paid by Cobb County, his compensation came from Cobb County funds, and his employment benefits were the same as those available to Cobb County employees. Cobb County also approved the annual operating budget of the District Attorney's Office, which included individual employee salaries. All of this occurred in accordance with Georgia law, which provides:

> Personnel employed by the district attorney pursuant to this Code section shall serve at the pleasure of the district attorney and shall be compensated by the county or counties comprising the judicial circuit, the manner and amount of compensation to be paid to be fixed either by local Act or by the district attorney with the approval of the county or counties comprising the judicial circuit.

Ga. Code Ann. § 15-18-20(b). Investigators are included among the personnel employed pursuant to that section of Georgia's code. Ga. Code Ann. § 15-18-20(a) ("The district attorney in each judicial circuit may employ such additional

. . . investigators . . . as may be provided for by local law or as may be authorized by the governing authority of the county or counties comprising the judicial circuit.").

During discovery, Anthony Hagler, the human resources director for Cobb County, was deposed twice -- once on his own behalf and once as a representative for Cobb County pursuant to Fed. R. Civ. P. 30(b)(6). When asked if employees, such as Peppers, working in the District Attorney's Office were considered County employees, Hagler stated several times that they were on the County payroll, and considered County employees. In each such instance, however, Hagler made clear that he considered County employment to be synonymous with appearing on the County's payroll. Hagler also said that the County reported to the Georgia Department of Labor, Internal Revenue Service, and Equal Employment Opportunity Commission ("EEOC") that individuals working in the District Attorney's Office were County employees. Moreover, the District Attorney's employees were covered by the County's worker compensation plan, and unemployment compensation policy. The employees' salaries were paid out of Cobb County's general funds.

Hagler's testimony was clear throughout that, as far as he and the County were concerned, the County's involvement with the District Attorney's employees was limited to providing the budget and benefits. The County played no role in

hiring, supervising, firing, establishing pay, or setting the duties and responsibilities of the prosecutor's employees.  As Hagler explained in a separately filed declaration after his deposition, the County's limited involvement with the District Attorney's criminal investigators included cutting their paychecks, ensuring that criminal investigators received proper benefits under the County's employee benefits and retirement program, and distributing annual pay raises when requested and approved by the District Attorney and authorized by the County. Notably, Cobb County played no role in Peppers's recruitment or hiring, creating his job title, establishing his job responsibilities and pay, regulating his work environment, or supervising him.

Indeed, the District Attorney's Office was a legal entity separate from the County.  See Ga. Const. art. VI, § 8, ¶ I(a) ("There shall be a district attorney for each judicial circuit, who shall be elected circuit-wide for a term of four years."); Ga. Const. art. IX, § 9, ¶ I ("Each county shall be a body corporate and politic with such governing authority and with such powers and limitations as are provided in this Constitution and as provided by law.").  The County was responsible only for approving the District Attorney's annual budget.

Former District Attorney Patrick Head confirmed in a deposition the nature of the criminal investigators' relationship to the District Attorney.  According to Head, he had total control over employee hiring, firing, and compensation, within

6

the overall budgetary boundaries set by the County, although he believed that he

needed County approval to create new positions or give someone a raise.

Moreover, as he explained the system, he had the authority to set salaries -- with

approval of the County -- but disagreed with any suggestion that the County had

the authority to set salaries by itself.  Rather, the County's power extended no

further than approving or disapproving the salaries that he set as the District

Attorney.  As for Investigator Christine Nerbonne in particular, he recalled

contacting the County Manager's office to get approval for her to be hired because

he wanted this hiring to be recognized as a lateral transfer.  This would enable

Nerbonne to receive the same compensation she had been receiving in another

position as a Cobb County employee.  The current District Attorney, Vic Reynolds,

reiterated Head's understanding of the plenary authority of the District Attorney

over the hiring, supervising, and firing of the Office's personnel.

On this record, both parties moved for summary judgment.  A magistrate

judge, to whom the case was referred, issued a Report and Recommendation that

the County's motion for summary judgment should be granted, and Peppers's

partial motion denied because no reasonable jury could find that the County was

Peppers's "employer" for purposes of either Title VII or the Equal Pay Act.

Peppers unsuccessfully filed objections with the district court.  Most importantly,

the district court concluded that Hagler's testimony that Peppers was an employee

on the County payroll could not be taken as an admission by the County that it was Peppers's employer for the purposes of Title VII or the Equal Pay Act.  The district court adopted the Report and Recommendation as its own, granted the County's summary judgment, and denied Peppers's cross-motion for summary judgment.

This timely appeal followed.

## II.

## A.

We review de novo a district court's order granting summary judgment, taking all of the facts in the record and drawing all reasonable inferences in the light most favorable to the non-moving party.  Rioux v. City of Atlanta, 520 F.3d 1269, 1274 (11th Cir. 2008); Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007).  Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties in State of Ala., 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

**B.**

It is unlawful under Title VII for employers to discriminate against any individual on account of the individual's sex.  42 U.S.C. § 2000e-2(a)(1).  Under Title VII, an "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b).  A "person" includes "individuals, governments, governmental agencies, [and] political subdivisions . . . ."  42 U.S.C. § 2000e(a). Title VII defines an "employee" as "an individual employed by an employer[.]" 42 U.S.C. § 20003(f).  As we have previously observed, "This definition does not get us very far."  Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1243 (11th Cir. 1998).  The Supreme Court, however, has held that when a statute includes such a "nominal definition" to define the term "employee," Congress intended to "describe the conventional master–servant relationship as understood by common-law agency doctrine."  Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 444-45 (2003) (quotation marks omitted).  A plaintiff's status as an employee under Title VII is a question of federal, as opposed to state, law. Calderon v. Martin Cty., 639 F.2d 271, 272-73 (5th Cir. 1981).  Thus, an employee's status is determined by examining the language contained in Title VII, existing federal case law, and the circumstances of the case.  Id. at 273.

Likewise, the Equal Pay Act generally prohibits employers from paying employees of the opposite sex different amounts for equal work on jobs that require equal skill, effort, and responsibility, and that are performed under similar working conditions.  29 U.S.C. § 206(d)(1).  We have held that when evaluating whether a defendant would qualify as an employer who is subject to the terms of the Equal Pay Act, a court should consider among others, these basic factors: whether the employment took place on the alleged employer's premises; the degree of control the putative employer exerted over the employees; and whether the alleged employer had the power to fire, hire, or modify the terms and conditions of employment.  Welch v. Laney, 57 F.3d 1004, 1011 (11th Cir. 1995).

### III.

### A.

The County argues at the outset that, regardless of the merits of Peppers's claim, the district court lacked jurisdiction to consider the matter because Peppers filed an EEOC charge against the District Attorney's Office and not against the County itself.  We have long recognized that "in the federal tandem, jurisdiction takes precedence over the merits.  Unless and until jurisdiction is found, both appellate and trial courts should eschew substantive adjudication." Belleri v. United States, 712 F.3d 543, 547 (11th Cir. 2013) (alterations adopted) (quoting

Opelika Nursing Home, Inc. v. Richardson, 448 F.2d 658, 667 (5th Cir. 1971)).

Thus, we are obliged first to consider our power to entertain the claim.

Generally, only a party named in an EEOC charge can subsequently be charged in a lawsuit filed in court under Title VII. Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1358 (11th Cir. 1994). "This naming requirement serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII." Id. Our courts liberally construe this requirement and, where the Act's purposes are fulfilled, a party not named in an EEOC charge may be subject to federal court jurisdiction. Id. at 1358-59. In examining whether the Act's purposes have been met, we are required to examine several factors, including:

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

Id. We have treated the administrative exhaustion requirement as a "jurisdictional prerequisite to filing a Title VII action." Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999).

For starters, there is no dispute in this case that the County received adequate notice of the charges.  Anthony Hagler, the County's human resources director, testified that the County had received a copy of Peppers's EEOC complaint.  Moreover, there is at least a similarity -- although not an identity -- of interests between the County and the District Attorney's Office on personnel matters.  Finally, the County was not stopped from participating in the EEOC's reconciliation process as a result of its failure to be named because -- based on the EEOC's quick turnaround of the charge -- even the District Attorney's Office (which had been named) was not afforded the opportunity to participate.  The County cannot show any prejudice it suffered as a result of Peppers's failure to name it in his EEOC claim.  Both the district court and Court have jurisdiction to entertain Peppers's claim.

**B.**

Peppers argues, in turn, that the district court erroneously granted summary judgment on the County's behalf after concluding that the County was not Peppers's employer.  Peppers claims that although he worked directly in the District Attorney's Office, the County acted as his "joint employer," thus exposing the County to liability and suit under the federal anti-discrimination laws.  On this record, we are unpersuaded.

A Title VII workplace discrimination claim can only be brought by an employee against his employer.  <u>Llampallas</u>, 163 F.3d at 1242; <u>Virgo</u>, 30 F.3d at 1359.  Consistent with the remedial purposes of Title VII, the federal courts have interpreted the term "employer" liberally.  <u>Virgo</u>, 30 F.3d at 1359.  Thus, in order to decide whether an entity is a qualified employer, we have asked this basic question: "who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim."  <u>Lyes v. City of Riviera Beach</u>, 166 F.3d 1332, 1345 (11th Cir. 1999) (en banc).  An examination of this question requires consideration of the totality of the employment relationship.  <u>Welch</u>, 57 F.3d at 1011 (citing <u>Wirtz v. Lone Star Steel Co.</u>, 405 F.2d 668, 669-70 (5th Cir. 1968)).  Among the basic factors we consider are these: (1) how much control the alleged employer exerted on the employee, and (2) whether the alleged employer had the power to hire, fire, or modify the terms and conditions of the employee's employment.  <u>Welch</u>, 57 F.3d at 1011; <u>Llampallas</u>, 163 F.3d at 1243.

Here, there is no dispute that Cobb County and the Cobb Judicial Circuit District Attorney's Office are legally distinct governmental entities.  Indeed, as we have noted, the position and general duties of district attorneys are created by the Georgia state constitution.   Ga. Const. art. VI, § 8, ¶ I(a).  The County, likewise, is created by the Georgia state constitution.  Ga. Const. art. IX, § 9, ¶ I.  Thus, the District Attorney's Office for the Cobb Judicial Circuit is a wholly distinct state

office.  Nor is there any dispute that, as a matter of Georgia law, the County lacked the authority to supervise, hire, or fire employees of the district attorney.  Ga. Const. art. IX, § 2, ¶ I(c); Ga. Code Ann. § 15-18-20(b).  Thus, the County only possessed the power to approve the "manner and amount of compensation" for employees that was set by the District Attorney.  Ga. Code Ann. § 15-18-20(b).  Finally, there is no dispute that Peppers was hired and wholly supervised by the District Attorney.  This, then, would seem to end the inquiry.

Peppers argues, however, that it is still possible to aggregate the County and the District Attorney so that they can both be characterized as his joint employers.  Affording the term "employer" the liberal construction it is due, there are instances where we have looked beyond the nominal independence of an entity and asked "whether two or more ostensibly separate entities should be treated as a single, integrated enterprise when determining whether a plaintiff's 'employer' comes within the coverage of Title VII."  Lyes, 166 F.3d at 1341.  We have broadly recognized three circumstances when this kind of aggregation may be possible:

> First, where two ostensibly separate entities are highly integrated with respect to ownership and operations, we may count them together under Title VII.  This is the "single employer" or "integrated enterprise" test.  Second, where two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees, we may treat the entities as "joint employers" and aggregate them.  This is the "joint employer" test.  Third, where an

14

> employer delegates sufficient control of some traditional
> rights over employees to a third party, we may treat the
> third party as an agent of the employer and aggregate the
> two when counting employees.

Id. (internal quotation marks and citations omitted).

In considering whether Cobb County and the Cobb Judicial Circuit District Attorney are properly aggregated, we first look for guidance in our en banc opinion in Lyes v. City of Riviera Beach, 166 F.3d 1332 (11th Cir. 1999), and its examination of when governmental subdivisions may be aggregated under the single-employer test. For one thing, we have held that "where a state legislative body creates a public entity and declares it to be separate and distinct, that declaration should be entitled to a significant degree of deference, amounting to a presumption that the public entity is indeed separate and distinct for purposes of Title VII." Id. at 1344. If a "fact finder reasonably could conclude the plaintiff has clearly overcome the presumption" that the entities are separate, then the entities will be considered a single employer for purposes of Title VII. Id. at 1345. The standard is an exacting one, however, and the presumption is only overcome with strong evidence. Id. Lyes offered two ways to rebut the presumption against aggregating separate government entities. Id. In the first place, a plaintiff may rebut it by presenting evidence that a governmental entity was created or maintained for the purpose of evading the federal employment discrimination laws. Id. at 1344. Second, absent an evasive purpose, a plaintiff can offer evidence

allowing a reasonable fact finder to conclude that the presumption is clearly outweighed by "factors manifestly indicating that the public entities are so closely interrelated with respect to control of the <u>fundamental</u> aspects of the employment relationship that they should be counted together under Title VII." <u>Id.</u> at 1345 (emphasis added).  Relevant factors in this calculus include: centralized control of operations; authority to hire, transfer, promote, discipline, or discharge; authority to establish work schedules or direct assignments; and the obligation to pay the plaintiff. <u>Id.</u>  We also observed that "the source of a governmental entity's funding is a poor indication of whether it should be aggregated with another." <u>Id.</u> at 1346 n.10.

The reason for the presumption against aggregation where governmental subdivisions are concerned is rooted in comity, federalism, and respect for a state's abilities to create and define its own institutions.  As we explained, "We should not brush aside a state's own distinctions between its governmental subdivisions, because even ostensibly formal distinctions are part of a government's ability to shape its own institutions within constitutional bounds, and we are obligated to respect a state's right to do so." <u>Id.</u> at 1344.  Because there are "few things closer to the core of a state's political being and its sovereignty than the authority and right to define itself and its institutions in relation to each other," <u>id.</u>, we must act

with particular care and hesitation when we are asked to override those distinctions

the state has adopted.

Here, it is self-evident from the basic laws of the State of Georgia that Cobb

County is a distinct entity from the District Attorney's Office, and there is no

argument that the Lyes standard for aggregating the two has been met.  We have

also observed, albeit outside the context of employment discrimination, that

"Georgia district attorneys are paid by state funds, although the county or counties

within the district attorney's judicial circuit may supplement their salaries."

Owens v. Fulton Cty., 877 F.2d 947, 951 (11th Cir. 1989) (citing Ga. Code. Ann.

§ 15-18-10).  Moreover, district attorneys serve a judicial district, not a specific

county.  Id.  In fact, the great majority of judicial circuits in Georgia are comprised

of more than one county.  Id.  That the Cobb Judicial Circuit's boundaries are

coincidentally coterminous with Cobb County does not in any way lessen the fact

that the District Attorney's Office is a state, not a county, office.  We add that

Georgia statutory code expressly empowers the District Attorney to hire and

discharge personnel and to "define the duties and fix the title of any attorney or

other employee of the district attorney's office."  Ga. Code. Ann. § 15-18-20(a).

Clearly, the presumption of separation applies.  There is nothing in this record --

nor does Peppers argue that there is -- to support a conclusion that the separation

between the County and the District Attorney was created for the purpose of

evading federal employment discrimination law, or that other factors manifestly indicated that the two entities are so closely interrelated that they should be considered as being one entity.  See Lyes, 166 F.3d at 1345.

Since Peppers cannot reasonably claim that the County and the District Attorney ought to be considered a "single employer," he argues that they acted as "joint employers," at least insofar as his compensation is concerned.  "A 'joint employer' relationship is different from, though sometimes confused with, a 'single employer' situation."  Virgo, 30 F.3d at 1359 n.6.  We are not aware of any case explicitly applying the Lyes framework to a "joint employer" analysis, as opposed to the "single employer" context arising in that case.  This is arguably a meaningful distinction because in the context of a "single employer" finding, we are essentially erasing a distinction that the state itself has recognized.  But a "joint employer" finding recognizes that separation, only to conclude that the two separate entities collaborated to jointly employ an individual.  Because it does not completely disregard the state's decision to separate its governmental subdivisions, the concerns of comity and federalism are lessened in a "joint employer" finding.  That said, the concerns regarding comity and federalism do not completely vanish.  Indeed, even when considering whether two governmental subdivisions are joint employers, we must remain mindful of the state's expressed determination that the agencies and subdivisions of government are divided and separated.  Although the

18

degree of deference set forth in <u>Lyes</u> need not be afforded, we are still well-advised to act with care and circumspection before aggregating separate state actors as joint employers.

The test for determining whether two entities acted as joint employers is relatively straightforward:

> The basis of the finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer. Thus the joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the <u>essential</u> terms and conditions of employment.

<u>Virgo</u>, 30 F.3d at 1360 (emphasis added) (quoting <u>N.L.R.B. v. Browning–Ferris Indus.</u>, 691 F.2d 1117, 1122 (3d Cir. 1982)).  The Tenth Circuit has provided a useful description of what it means to be a joint employer and how that differs from being a single employer: "While the single employer test looks at the overall relationships of the two entities, joint employer status is determined by focusing on the entities' relationships to a given employee or class of employees. The joint employment relationship, in other words, is employee-specific."  <u>Sandoval v. City of Boulder, Colo.</u>, 388 F.3d 1312, 1324 (10th Cir. 2004).  Thus, entities comprising a "single employer" are the same for all purposes, while "joint employers" are the same only for certain employees or classes of employees.  Notably, the Tenth

Circuit has described the focus as resting on the employee or class of employees, as opposed to particular aspects of employment.  This corresponds to our conception of the inquiry as likewise being focused on the "total employment situation."  See Welch, 57 F.3d at 1011.

Peppers has not adduced any evidence to establish that the County and the District Attorney acted as his joint employers with regard to his total employment situation.  Again, the County had no involvement in recruiting or hiring Peppers as a criminal investigator, creating his job title, establishing his job responsibilities and pay, regulating his work environment, or supervising him in any way.  The County's involvement with investigators working in the District Attorney's Office was essentially to act as a paymaster -- its role consisted solely and entirely of issuing paychecks, ensuring investigators received proper benefits, distributing annual pay raises when requested and approved by the District Attorney, and approving the District Attorney's budget.  The long and short of it is that the District Attorney alone filled nearly all of the roles traditionally filled by an employer.  Indeed, Cobb County had no more control over the nature, power, and functions of the investigators than it had the authority to determine which cases and prosecutions the District Attorney's Office ought to pursue.  Thus, looking at a "conventional master–servant relationship as understood by common-law agency doctrine," the signs point obviously (and solely) toward the District Attorney being

20

Peppers's employer.  See Clackamas Gastroenterology Assocs., 538 U.S. at 445
(quotation marks omitted).

Peppers argues, nevertheless, that the County was the entity "in control of
the fundamental aspects of the employment relationship that gave rise to the
claim," and thus should be exposed to liability under Title VII because this is a
case centered on disparities in compensation.  He says that he was paid from
County funds, with paychecks issued by the County, and that the County had
authority to approve the District Attorney's budget, including individual salaries.
Even so, the County could not change Peppers's salary unless the District Attorney
requested and recommended such a change.  In fact, there was no evidence to
suggest that the County had authority to do anything with regard to Peppers's
salary other than to approve or disapprove it.  This is a far cry from co-determining
the essential terms and conditions of Peppers's employment.  Thus, it hardly
suggests that the County possessed joint authority over Peppers's employment,
even in this narrow area.

But, more fundamentally, Peppers's joint employer argument founders
because the focal point of the inquiry is not which entity controlled the specific
aspect of the relationship giving rise to a discrimination claim, but rather which
entity or entities controlled the fundamental and essential aspects of the
employment relationship when taken as a whole.  Whichever entity (or entities)

predominantly controls the terms of the relationship may be found liable under Title VII.  Thus, the County's role in approving Peppers's compensation is not dispositive.  Moreover, recognizing two distinct governmental agencies or subdivisions as joint employers for purposes of compensation, but not for the purposes of hiring, firing, supervising, or anything else seems patently wrong.  Even a liberal reading of the term "employer" cannot encompass such an analytically gerrymandered understanding.  Peppers has failed to present a sufficient evidential foundation to support the conclusion that the County acted as his joint employer.  Indeed, he has failed to present a material fact in dispute on this point.

Finally, Peppers makes much in his briefing of the County's purported admission that he was an employee of Cobb County.  To be sure, Hagler, the County's human resources director, said that Peppers was a County employee.  But even reading the statement in the light most favorable to Peppers, it does not sustain his claim when taken in context.  Hagler's "admissions" cannot reasonably be read as demonstrating that the County was Peppers's employer for the purposes of federal anti-discrimination laws.  Rather, he was speaking purely to whether Peppers appeared on the County payroll and the related administrative filings that are associated with that.  He was not addressing whether, as a substantive matter, the County was engaged in the classical kinds of activities that would render it an

"employer" under Title VII or the Equal Pay Act.  Indeed, at no point did Hagler so much as suggest that the County had any control over hiring, firing, setting the duties of, or supervising the work of Criminal Investigator Peppers.

Quite simply, an examination of the entire record of Peppers's employment relationship establishes that Cobb County was not his employer even though it provided paymaster, administrative, and budgetary functions for the District Attorney's Office.  Nor can the County be aggregated with his actual employer to support a federal anti-discrimination case under the joint-employer theory. The district court properly granted final summary judgment to the County and denied Peppers's cross motion; accordingly, we affirm.[2]

**AFFIRMED.**

---

[2] Since summary judgment has been properly entered for the County because it was not Peppers's employer, we need not, and do not, consider Peppers's additional claim that, if the County were his employer, he would be entitled to summary judgment.

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 25, 2016

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  15-10866-BB
Case Style:  Jeff Peppers v. Cobb County, Georgia
District Court Docket No:  1:13-cv-01340-ELR

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF")
system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal.
Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in
accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for
rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings,
a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time
specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a
motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list
of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-
1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition
for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time
spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a
petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against the appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature
block below. For all other questions, please call Carol R. Lewis, BB at (404) 335-6179.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs